UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN BLAVATT,

       Plaintiff,                      CIVIL ACTION NO. 10-10930

    v.                               DISTRICT JUDGE JOHN CORBETT O'MEARA

COMMISSIONER OF                 MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

       Defendant.
                          /

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I.    PROCEDURAL HISTORY**

    *A.*    *Proceedings in this Court*

On March 9, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of Disability Insurance and Supplemental Security Income benefits (Dkt. No. 3). This matter is currently before the Court on cross-motions for summary judgment (Dkt. Nos. 10, 13).

    *B.*    *Administrative Proceedings*

Plaintiff previously filed claims for Disability Insurance (on March 25, 2005) and for Supplemental Security Income (on September 1, 2005) (Tr. 65). Plaintiff requested a hearing on these claims, which took place on May 1, 2006 (Tr. 61). Administrative Law Judge ("ALJ") Melvyn B. Kalt found on May 17, 2006, that Plaintiff was not disabled (Tr. 65). Specifically, ALJ Kalt

found that – despite Plaintiff's allegations that he could not work due to multiple joint injuries, surgeries, and associated chronic pain – the medical evidence demonstrated that Plaintiff had largely recovered from his injuries and was generally able to perform his activities of daily living (Tr. 62-63). The Appeals Council declined review and Plaintiff did not appeal this unfavorable decision to this Court.

Plaintiff filed the claims presently on appeal on May 23, 2006, alleging that he became unable to work on May 17, 2006 – *i.e.*, the day ALJ Kalt issued his unfavorable decision (Tr. 8, 112-122). The claims were initially disapproved by the Commissioner on October 19, 2006 (Tr. 8, 71-88). Plaintiff requested a hearing and, on December 11, 2008, Plaintiff appeared with a non-attorney representative before ALJ Michael F. Wilenkin, who considered the case *de novo*. Before the hearing date, Plaintiff amended his onset date to August 1, 2006 (Tr. 8, 169). In a decision dated June 2, 2009, ALJ Wilenkin found that Plaintiff was not disabled (Tr. 5-17). Plaintiff requested a review of this decision on July 6, 2009 (Tr. 111). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (Exhibit B8E, Representative Brief, dated 7/6/09, Tr. 170-171), the Appeals Council, on January 27, 2010, denied Plaintiff's request for review (Tr. 1-4).

In light of the entire record in this case, I find that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, it is **RECOMMENDED**

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II. STATEMENT OF FACTS

### A. *ALJ Findings*

Plaintiff was 51 years old on his alleged disability onset date (Tr. 17). Plaintiff has past relevant work as a quality controller (Tr. 16). ALJ Wilenkin applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since May 17, 2006 (Tr. 10). At step two, the ALJ found that Plaintiff had the following "severe" impairments: history of multiple fractures with surgical interventions resulting in residual arthritis, history of right wrist fusion and obesity. *Id*. At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations (Tr. 13). Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform "a limited range of light work... Specifically, [Plaintiff] can lift 20 pounds occasionally and 10 pounds frequently, but not repetitively; sit, stand or walk for six of eight hours each in a work day; push or pull without limitation except using the right hand only as a helper; perform postural activities occasionally; perform any manipulative functions not requiring forceful use of the hands and using the right hand only as a helper; see, hear and speak without limitation; and perform work in any environment mentally, [Plaintiff] can understand, remember and carry out somewhat complex instructions such as those inherent to semiskilled work; make judgments on somewhat complex work-related decisions such as those inherent to semiskilled work; interact appropriately with the public, supervisors and co-workers; respond appropriately to work pressures in a usual work setting; and respond appropriately to changes in a routine work setting" (Tr. 13) At step four, the ALJ found that Plaintiff could perform his previous work as a quality controller because that work did not

require the performance of work-related activities precluded by Plaintiff's RFC (Tr. 16). Thus, the ALJ found that the Plaintiff was not disabled.

### B. *Administrative Record*

#### 1. **Plaintiff's Testimony and Statements**

Plaintiff's alleged physical disabilities include: limited use of his wrists and his hands due to wrist fractures in 2006 as the result of a physical altercation (Tr. 34). Plaintiff stated that the subsequent wrist surgeries and fusion of his right wrist, and the trauma related arthritis of the wrists, have also contributed to his disabling condition (Tr. 34). Plaintiff also alleged that leg, ankle and feet injuries from a car accident in 1987 are contributing factors to his physical disability (Tr. 37). Further, Plaintiff alleged that he suffers from mental health disabilities of anxiety, depression and other related emotional and cognitive problems (Tr. 38). Plaintiff reported that, in connection with his physical disabilities, he experiences pain in the affected limbs including numbness and tingling pain (Tr. 35, 37). This pain is exacerbated by prolonged periods of standing, sitting or walking (Tr. 38).

Plaintiff testified that his last place of employment was with a landscaping company; this job required him to load gravel and salt onto trucks (Tr. 30); he stopped working on December 16, 2004, because the landscaping company would not allow him to work unless a doctor gave him clearance (Tr. 130). Plaintiff stated that his doctor did not give him such clearance (Tr. 33).

Plaintiff completed an adult function report on September 29, 2006 (Tr. 145). In this report, Plaintiff stated that he is still able to perform daily activities, mostly on his own and some with assistance from his mother (Tr. 147). The daily activities that Plaintiff is able to perform on his own include: bathing, dressing himself, preparing meals, taking care of household chores, riding his bicycle or the bus as transportation, shopping for necessities and attending church every Sunday,

except in the winter time (Tr. 45, 145-149). Plaintiff indicated that all of these activities, even though he can perform them, cause him physical pain (Tr. 150). Plaintiff further reported that he is able to get along well with others including authority figures (Tr. 151). Plaintiff also stated that he is able to socialize with family and friends (Tr. 43).

### 2.  Medical Evidence

Plaintiff began mental health treatment in August of 2006 (Tr. 168). Plaintiff was treated by Sarath Hemachandra, M.D., a psychiatrist, and Susan Gill, a therapist; both of Macomb County Community Mental Health Services (Tr. 173). Plaintiff reported a "past history" of depression and alcohol dependence, and intermittent cocaine abuse and "explosiveness" (Tr. 213). Dr. Hemachandra noted that Plaintiff walked slowly with a limp, and found that he dressed appropriately with satisfactory personal hygiene (Tr. 214). Despite his history of depression and "periods when [his] mind [was] racing," Plaintiff had "[n]o current psychotic symptoms evident" (Tr. 214). Dr. Hemachandra's initial report on August 1, 2006 noted that Plaintiff had difficulty with abstract reasoning and that Plaintiff had marked limitations in performing detailed tasks and maintaining attention and concentration (Tr. 215). Dr. Hemachandra's report also included a GAF score of 40.[2] *Id.*

On September 3, 2006, Plaintiff went to see Shelley Galasso Bonnano, M.A., a psychologist with a master's degree, from Michigan Disability Determination Services to obtain a mental evaluation (Tr. 172). Ms. Bonanno found Plaintiff "superficially cooperative" during her

---

[2] The GAF score is "a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). A GAF score of 31-40 indicates some impairment in reality testing or communication (*e.g.*, speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood. A GAF of 41 to 50 means that the patient has serious symptoms . . . OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).

examination, though easily agitated (Tr. 174, 176). Plaintiff was poorly groomed and attired, and had no permanent residence, but took the bus to his appointment and "denied requiring assistance" to prepare for it (Tr. 174). Ms. Bonanno found Plaintiff was tense, with fair self-esteem, vague mental activity, and poor insight (Tr. 175). However, he had adequate contact with reality (Tr. 175). Ms. Bonnano gave Plaintiff a GAF rating of 45 (Tr. 177). Ms. Bonnano's report further indicates that Plaintiff suffered from the following mental health impairments: a mood disorder, polysubstance abuse dependence and social/occupational difficulties based on homelessness and chronic pain. *Id*.

Plaintiff was next seen on September 7, 2006 by Lal Banerji, M.D., from Michigan Disability Determination Services (Tr. 179). After a physical examination, Dr. Banerji reported that Plaintiff's movements of the hip and knee joints are restricted due to obesity (Tr. 180). Dr. Banerji also noted a small tissue swelling over the right wrist joint, but no signs of inflammation and no loss of dexterity *Id*. Dr. Banerji also observed that Plaintiff walked fairly well without any walking aid. *Id*. Also in September 2006, a state agency physician reviewed Dr. Banerji's "unremarkable" consultative examination and Plaintiff's other records, found no medical impairment that would support Plaintiff's claims of limitation, and opined that Plaintiff's physical limitations were non-severe (Tr. 191). The next month, a state agency psychiatrist reviewed the record, including the psychiatric consultative examination, and opined that Plaintiff's mental impairments were non-severe, and caused no more than mild limitations (Tr. 195, 205, 207).

The record reflects no medical treatment for eleven months, when Plaintiff returned to Macomb County Community Mental Health in July 2007 for his annual assessment (Tr. 216-25). Plaintiff's assessment noted that he was not a potential harm to himself or others at this time (Tr. 220). Further, it was noted that Plaintiff's support needs are able to be fulfilled independently without the assistance of others (Tr. 220-222). Dr. Hemachandra opined that Plaintiff's mental

impairments would not continue longer than six months (*see* Tr. 226), and summarized that Plaintiff could perform his activities of daily living "without direction" and was "capable of handling all independent living skills" (Tr. 222). Plaintiff's assigned GAF score at this time was 50 (Tr. 225).

The record reflects no medical treatment for the next eleven months, when, on June 6, 2008, Eddie Idrees, M.D., saw Plaintiff for a medication review and refills (Tr. 258-59). Dr. Idrees noted Plaintiff's high blood pressure, dysplipidemia (high cholesterol), and arthritis (Tr. 259). The treatment notes indicate that Plaintiff's medications were adequately controlling his symptoms, and that he had no side effects or new complaints (Tr. 259). Plaintiff returned to Dr. Idrees on July 2, 2008, again reporting that his medications controlled his symptoms and caused no side effects, and that he had no new symptoms (Tr. 254). Dr. Idrees found Plaintiff was communicative, cooperative, and had good hygiene at both appointments (Tr. 254, 259).

On July 24, 2008, Plaintiff went to Dr. Hemachandra's office for his annual mental health assessment and this time was seen by Steven Carpenter, a Licensed Social Worker (Tr. 228). Mr. Carpenter noted in his report that mental health treatment has improved Plaintiff's condition and that he has met with the Plaintiff once a month for case management sessions since Plaintiff's last annual assessment in July of 2007 (Tr. 232). Mr. Carpenter also provided testimony at Plaintiff's administrative hearing on December 11, 2008 (Tr. 48-56). At Plaintiff's hearing, Mr. Carpenter reported that, in his opinion, Plaintiff's mental health had worsened since he began mental health treatment due to his combined physical and medical issues (Tr. 52). Mr. Carpenter also testified that the Plaintiff has above-average levels of anxiety, is very disorganized and complains about his pain symptoms (Tr. 54-56).

The record reflects no further medical treatment. Following the hearing, the ALJ had the state agency send Plaintiff for a second consultative psychiatric evaluation (*see* Tr. 15, 266-67).

Fariha Qadir, M.D., evaluated Plaintiff on January 23, 2009 (Tr. 260-68). Plaintiff discussed a past history of problems interacting with others, and told Dr. Qadir that he had depression, but "could not describe any symptoms" (Tr. 260). Dr. Qadir diagnosed an alcohol dependence in remission, a history of polysubstance abuse, and a mood disorder, and assessed Plaintiff's GAF score as 55 (Tr. 262). Despite a tendency to become irritable or manipulative, Dr. Qadir opined that Plaintiff "did not present with any significant symptoms of a mood disorder that can cause problems in the work setting" (Tr. 262). He also found Plaintiff "tended to exaggerate his symptoms" (Tr. 261).

Dr. Qadir completed a medical source statement, finding that Plaintiff "[did] not appear to have any problems understanding or following directions" and had no significant symptoms that would affect his ability to understand, remember, and carry out instructions (Tr. 263). Dr. Qadir also noted that Plaintiff's "tendency" for problems with irritability and supervision could cause mild to moderate limitations in his ability to interact with others (Tr. 264).

### C. *Plaintiff's Claims of Error*

On appeal, Plaintiff asserts three challenges to the ALJ's ruling: (1) that the ALJ's RFC determination is incomplete, erroneous and not supported by substantial evidence (Pl's Br. at 11-14); (2) that the ALJ's credibility finding is vague, erroneous and not supported by substantial evidence (*id.* at 14-19); and (3) that the ALJ's Step Four determination is erroneous and not supported by substantial evidence (*id.* at 19-20).

## III. DISCUSSION

### A. *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S.

521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the Plaintiff may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the [Plaintiff]." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a [Plaintiff]'s subjective complaints and may...consider the credibility of a [Plaintiff] when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the [Plaintiff] are to be given great weight, particularly since the ALJ is charged with observing the [Plaintiff]'s demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, [Plaintiff]'s testimony, and other evidence."). "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks

omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B.     *Governing Law*

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the

> impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the [Plaintiff] bears the burden of proving the existence and severity of limitations caused by his impairments and the fact that he is precluded from performing his past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

### C. *Analysis and Conclusions*

As noted earlier, Plaintiff makes three arguments on appeal. Each argument is discussed below:

#### 1. The ALJ's RFC determination is supported by substantial evidence

Plaintiff's first argument is that the ALJ's RFC determination was incomplete, erroneous and unsupported by substantial evidence. Defendant responds that, contrary to Plaintiff's contention, the ALJ's RFC determination of Plaintiff was supported by substantial evidence.

Plaintiff's argument relies upon two Sixth Circuit cases, *Lowery v. Comm'r of Soc. Sec.*, 55 Fed. Appx. 333, 339 (6th Cir. 2003) and *Hurst v. Sec'y of Health & Human Serv's.*, 753 F.2d 517, 519 (6th Cir. 1985). Both of these cases stand for the proposition that an ALJ may not only discuss evidence that favors his opinion, but he must also articulate his analysis of the evidence with enough specificity as to give the entire record consideration. *See id*. Plaintiff claims that most of the treating physician's notes were not mentioned in the ALJ's opinion and, when the doctors' and caseworkers' opinions were discussed by the ALJ, they were discredited. Plaintiff argues that this establishes that the ALJ's disability finding in these circumstances is not supported by substantial evidence. However, even though "maladies should inform an assessment of [a claimant's] abilities, this does not mean that the RFC must enumerate them." *Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 239 (6th Cir. 2002).

"Generally, the opinions of treating physicians are given substantial, if not controlling deference." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see Cox v. Comm'r of Soc. Sec.*, 295 F. App'x 27, 35 (6th Cir. 2008) ("This court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another, where, as here, the ALJ's opinion is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record."). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by

detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *see also Kidd v. Comm'r of Soc. Sec.*, 283 F. App'x 336, 340 (6th Cir. 2008). An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876-77 (6th Cir. 2007).

As to Plaintiff's alleged physical ailments, Dr. Banerji offered the only medical source statement about Plaintiff's work-related physical limitations. While Plaintiff suggests generally that the ALJ ignored Dr. Banerji's opinions, *see* Pl's Br. at 12, the ALJ's decision demonstrates otherwise. The ALJ twice discussed Dr. Banerji's consultative findings (Tr. 11, 16). As the ALJ recounted, Dr. Banerji found Plaintiff's obesity caused "very minimal functional limitations" (squatting to 80% of a full range of motion) and opined that Plaintiff otherwise had no functional limitations (Tr. 16 (citing Tr. 180-81)). Other than discussing his self-reports, Plaintiff never identifies what specific evidence the ALJ overlooked, much less how any such evidence would have impacted the ALJ's findings. Plaintiff simply has not demonstrated how Dr. Banerji's opinion that Plaintiff had essentially no functional limitations would support a finding of disability. Furthermore, as the ALJ discussed, Dr. Idrees's treatment notes contained "little or nothing in the way of clinical observations" about Plaintiff's physical condition (Tr. 16). Thus, Plaintiff has not demonstrated that the ALJ erred in assessing Plaintiff's physical impairments.

As to Plaintiff's alleged mental impairments, the ALJ found that Dr. Hemachandra's initial opinion relied heavily upon Plaintiff's allegations (Tr. 14). Also, the ALJ found that Dr. Hemachandra's initial GAF score appeared to rely on facts such as lack of employment and homelessness – *i.e.*, factors not relevant to disability. *Id*. The ALJ properly accorded this opinion

little weight because the opinion was based upon one initial examination and not a history of treatment. *Id*.

Plaintiff also claims that the ALJ did not address his GAF scores when crafting an RFC, and contends that the GAF scores "documented" moderate mental impairments. Pl.'s Br. at 12. However, the Sixth Circuit has observed, no "statutory, regulatory, or other authority requir[es] the ALJ to put stock in a GAF score." *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006); *accord Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). Moreover, the ALJ highlighted that, despite testimony that Plaintiff experienced a "near total inability to leave his home" due to depression, he "could not relate any significant depressive symptoms" to Dr. Qadir less than one month later (Tr. 15 (citing (Tr. 260)). The ALJ also noted Dr. Qadir's finding that Plaintiff had a tendency to exaggerate his symptoms (Tr. 15 (citing Tr. 261)). In sum, the ALJ gave specific reasons for the weight he gave to each doctor's finding, and supported those reasons with citations to the record. Thus, the undersigned finds that Plaintiff's first argument lacks merit.

### 2. The ALJ's credibility finding is specific, correct and supported by substantial evidence

Plaintiff next challenges the ALJ's credibility finding, by arguing that the ALJ's opinion did not state any specific reasons for finding that the Plaintiff lacked credibility and therefore was not supported by substantial evidence. Defendant responds that the discrepancies throughout the record – which were referenced in the ALJ's opinion – support a finding that Plaintiff lacks credibility. Plaintiff relies on SSR 96-7p and 20 C.F.R. § 404.152 and argues that this ruling and regulation require an ALJ to follow a two-step process in evaluating an individual's self-report of his or her impairments. *See* Pl.'s Br. at 15. The two-step process requires an ALJ to consider the entire administrative record to determine the Plaintiff's credibility and that the credibility finding must contain specific reasons for the finding on credibility. *Id.* Plaintiff argues that the ALJ both failed

to consider the entire record in weighing Plaintiff's credibility and failed to provide specific reasons for finding that Plaintiff was not credible. *Id.* However, as many cases have reiterated, "[e]ven if the evidence could also support another conclusion, the decision of the [ALJ] must stand if the evidence could reasonably support the conclusion reached," *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, at 389-390.

In this case, the ALJ weighed the evidence that was presented including: testimony from Plaintiff, Plaintiff's mother and medical examination reports from various medical professionals. The ALJ concluded that a substantial portion of the evidence indicated that Plaintiff is able to care for himself independently and therefore not disabled (Tr. 11, 16). Throughout his decision, the ALJ highlighted the discrepancies between Plaintiff's claims of disabling depression and anxiety and the consistent reports Plaintiff made to his doctors about his ability to live independently and perform his daily activities without significant limitations. Plaintiff and his case manager, Mr. Carpenter, testified that he essentially could not leave his house, had trouble getting along with others, and, in Mr. Carpenter's words, experienced "crushing depression" (*e.g.*, Tr. 50). However, the ALJ noted that Plaintiff had lived alone, even when homeless, and managed his activities of daily living independently (Tr. 11). At least some of the time, Plaintiff spent the day at his mother's house helping her and cooking meals for both of them (Tr. 11 (citing Tr. 137)). Plaintiff testified that he had attended church regularly until the weather got too cold (Tr. 46-47); used public transportation to attend all of his appointments (Tr. 11 (citing, *e.g.*, Tr. 174)); and attended regular group counseling (Tr. 227, 232).

As the ALJ also highlighted, despite the testimony about allegedly severe depression and anxiety, Plaintiff reported none of these problems to Dr. Qadir who examined Plaintiff less than a month later at the ALJ's request (Tr. 11, 15). The ALJ found Plaintiff's claims about limitations in

working with others were not fully credible, either (Tr. 11, 14-16). For example, the ALJ cited the report from Plaintiff's mother that, despite his impairments, Plaintiff helped her since her heart surgery, was "quite capable" of paying his bills, shopped, went to church, visited friends, used the phone, handled stress well, could pay attention "as long as needed," could follow instructions, and "just need[ed] help getting a place to live" (Tr. 11 (citing 137-43)).

It is well established that this Court does not make its own credibility determinations. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *see also Lawson v. Comm'r of Soc. Sec.*, 192 F. App'x 521, 528 (6th Cir. 2006). The Court cannot substitute its own credibility determination for the ALJ's. The Court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed ...." *Kuhn v. Comm'r of Soc. Sec.*, 124 F. App'x 943, 945 (6th Cir. 2005). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007). The ALJ cited very specific reasons for his credibility finding and acted within his "zone of choice" *Felisky*, 35 F.3d at 1035 in finding Plaintiff less than credible. The undersigned finds no basis to disturb the ALJ's credibility determinations on appeal.

### 3. The ALJ's Step Four determination is correct and supported by substantial evidence.

The Plaintiff's final argument is that the ALJ's Step Four determination is incorrect and not supported by substantial evidence. Specifically, Plaintiff avers that ALJ Wilenkin wrongfully adopted ALJ Kalt's Step Four determination – *i.e.*, that Plaintiff can perform his prior relevant work

as a quality controller. In particular, Plaintiff claims that ALJ Wikenkin erred in finding that "[b]ased upon vocational expert testimony, [ALJ] Kalt concluded that [Plaintiff] can perform this past work in that it did not exceed his residual functional capacity. The undersigned so finds also." (Tr. 17).

Plaintiff acknowledges that ALJ Wilenkin was allowed to adopt ALJ Kalt's RFC and Step Four determinations, but argues that ALJ Wilenkin's reliance on ALJ Kalt's Step Four determination is still erroneous because ALJ Kalt's Step Four determination is based on a faulty RFC determination. Thus, this argument is directly related to Plaintiff's first argument that the RFC was faulty. As discussed above, ALJ Wilenkin's RFC determination was appropriate and, therefore, his Step Four determination was also appropriate. Furthermore, Plaintiff did not appeal ALJ Kalt's decision to this Court. Since Plaintiff did not appeal ALJ's Kalt's decision to this Court, that decision is binding and can form the basis of the RFC determination in ALJ Wilkenen's opinion. Thus, the undersigned finds that the Step Four determination is correct and supported by substantial evidence.

In sum, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated: February 4, 2011

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, February 4, 2011, by electronic and/or ordinary mail.*

s/Melody Miles
*Case Manager to Magistrate Judge Mark A. Randon*
*(313) 234-5542*